# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JESSICA O., | ) |
|       Plaintiff | ) |
| v. | ) No. 2:18-cv-00370-GZS |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security,[1] | ) |
|       Defendant | ) |

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred at Step 2 in (i) failing to recognize her post-traumatic stress disorder ("PTSD") and attention deficit disorder ("ADD") as severe impairments, (ii) assessing no mental functional limitations, "contrary to an uncontroverted medical opinion[,]" (iii) rejecting the opinion of agency examining consultant Arthur M. Scott, Jr., M.D., and ignoring the opinion of agency nonexamining consultant Robert Hayes, D.O., (iv) relying on the testimony of a vocational expert ("VE") present at her hearing that did not account for her limited ability to stand/walk and was provided in response to a flawed hypothetical question, and (v) ignoring a

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

post-hearing affidavit of a second VE, David Meuse. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 4-26. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2019, Finding 1, Record at 13; that she had the severe impairments of fractures of the right calcaneus and left scapula, left ankle injury, and thoracic spine compression fracture, Finding 3, *id.*; that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that in an eight-hour workday she could stand and/or walk for no more than four hours, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, and occasionally work overhead with her left upper extremity, Finding 5, *id.* at 14; that, considering her age (31 years old, defined as a younger individual, on her alleged disability onset date, October 12, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 16-17; and that she, therefore, had not been disabled from October 12, 2015, her alleged onset date of disability, through the date of the decision, January 18, 2018, Finding 11, *id.* at 18. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of*

*Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Steps 2 and 4 of the sequential evaluation process.

Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 4 of the sequential evaluation process, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Yuckert*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would

3

permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Failure to Recognize PTSD and ADD as Severe Impairments

The plaintiff first contends that the ALJ erred in failing to recognize her PTSD and ADD as severe mental impairments, noting that, in April 2015, her primary care physician, Laurie Churchill, M.D., referred her for a psychiatric consultation, explaining that she was suffering from increased PTSD symptoms, and, on August 15, 2016, treating psychiatrist Daniel Bates, D.O., conducted a psychiatric evaluation during which he diagnosed her with chronic PTSD and restarted her on Adderall, which she had reported had helped her greatly when she took it in high school for ADD. *See* Statement of Errors at 5-6. She argues that the error is outcome-determinative because the VE present at her hearing testified that there would be no work for an individual with the limitations assessed by Dr. Bates. *See id.* at 6-7; *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) (In this district, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

Nonetheless, as the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 7-11, the ALJ properly discounted Dr. Bates' opinion that the plaintiff "ha[d] many 'marked' limitations due to mental symptoms[,]" Record at 16, 853-54, rendering any error in failing to assess severe PTSD and ADD impairments harmless.

The ALJ explained that she accorded the Bates opinion "little weight" because it was "not . . . consistent with the medical evidence, including his own records[,]" "he did not see her until August 2016, ten months after the alleged onset date, and as of November 2017 had only seen her

4

two more times, in May and August 2017[,]" "there appear[ed] to be no basis for his diagnosis that the [plaintiff] had [ADD][,]" and, "[i]n any event, the evidence d[id] not support the existence of any severe mental impairment." *Id*. at 16. The plaintiff challenges all of the ALJ's bases for discounting the Bates opinion, *see* Statement of Errors at 10-13; however, even assuming *arguendo* that the ALJ erred in relying on the frequency of the plaintiff's visits with Dr. Bates and the lack of any basis for his diagnosis of ADD, she properly rejected his opinion on the basis of its inconsistency with the longitudinal medical evidence, including his own records.

On that point, the plaintiff asserts that, while the ALJ made a "blanket statement" that there were inconsistencies between the Bates opinion and the medical evidence, she identified no actual inconsistencies. Statement of Errors at 11. Yet, the ALJ did so elsewhere in her decision. She explained her conclusion that the plaintiff had no more than mild mental limitations as follows:

> I note that Judy Bean, LCSW, who provided counseling to the [plaintiff] from February to July 2016, repeatedly observed that she displayed appropriate behavior and affect, was cooperative, had intact memory and attention, and no difficulties with understanding. Providers have not documented problems with interacting with the [plaintiff], whom they describe as pleasant and cooperative. The [plaintiff] has not required emergent, inpatient or intensive outpatient treatment for psychological issues. Primary care records from March 2016 show that [she] reported improvement in her anxiety with medication and stated that counseling was "very helpful." Her score on the PHQ-9 that visit indicated a mild level of depression. After learning that she was pregnant in approximately July 2016, she weaned herself off Klonopin and Adderall, apparently with no adverse effects. There is no evidence that she saw a mental health professional after August 2016 until May 2017. Furthermore, she did not see one after May until August 2017. Thus, the evidence does not show that the [plaintiff]'s mental symptoms interfered with her functioning more than mildly for any consecutive 12-month period since the alleged onset date.

Record at 13-14 (citations omitted).[3]

---

[3] The plaintiff asserts that ALJ also overlooked the *consistency* between the Bates opinion and other evidence of record, including Dr. Churchill's notation that she was suffering from increased PTSD symptoms and notes of LCSW Bean documenting "problems with sleeping and with appetite, as well as an anxious, depressed mood; only fair reasoning and impulse control; and poor self-esteem[,]" as well as flashbacks. Statement of Errors at 11-12. Yet, the ALJ deemed the records of Ms. Bean inconsistent with the Bates opinion, *see* Record at 13-16, a finding that the plaintiff does not address, *see* Statement of Errors at 11-12. While the ALJ did not mention Dr. Churchill's notation,

5

Further, in discussing the longitudinal mental health evidence of record, she identified an inconsistency between Dr. Bates' opinion and his own treatment notes, observing that the plaintiff had "told Dr. Bates in May 2017 that she was 'doing fine' despite having discontinued all of her psychoactive medications." *Id*. at 16 (citation omitted).

That the Bates opinion was at odds with the longitudinal record, including Dr. Bates' own treatment notes, was, in itself, a sufficient reason to reject it. *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.");[4] *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018) ("[L]ack of support and inconsistency with other substantial evidence of record are well-recognized bases for affording a treating source's medical opinion little or no weight.").

The plaintiff also contends that remand is separately required because the Bates opinion is "uncontroverted[,]" reasoning that Dr. Bates was the only mental health practitioner to offer an opinion about the functional limitations resulting from her PTSD and ADD and the only one to offer an opinion bearing on the period during which he was treating her. Statement of Errors at 14. She cites, *inter alia*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999), for the proposition

---

*see* Record at 13-16, that omission in itself is not reversible error. The ALJ took into account records of psychiatric treatment providers who saw the plaintiff following Dr. Churchill's referral, including LCSW Bean and Dr. Bates. *See id*. at 13-16.

[4] I quote from the regulations in effect at the time of the issuance of the ALJ's decision, which were superseded as to claims filed on or after March 27, 2017, by 20 C.F.R. §§ 404.1520c and 416.920c, pursuant to which the commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c, 416.920c. The plaintiff filed the instant SSI and SSD applications on March 28, 2016. *See* Record at 10.

6

that an ALJ is "'not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion.'" *Id*. (quoting *Nguyen*, 172 F.3d at 35).

Yet, as the commissioner observes, *see* Opposition at 10-11, the Bates opinion was not uncontroverted. The ALJ relied on the October 28, 2016, opinion of agency nonexamining consultant David R. Houston, Ph.D., that the plaintiff had no severe mental impairment, which she deemed "supported by substantial evidence, including that received after [his] review." Record at 16; *see also id*. at 155-56 (opinion of Dr. Houston that, while the evidence documented reported symptoms of anxiety and depression, the plaintiff's alleged ADD/ADHD was not established by the evidence, and mental limitations associated with her mental impairments were "mild and non-severe").

At oral argument, the plaintiff's counsel disputed the ALJ's conclusion that evidence postdating the Houston opinion was immaterial, pointing out that Dr. Houston was unaware of Dr. Bates' later diagnosis of PTSD, which he contended has a unique etiology and results in symptoms different in kind and intensity from those considered by Dr. Houston. Yet, as discussed above, the ALJ supportably deemed Dr. Bates' mental RFC opinion inconsistent with his own treatment notes documenting the plaintiff's treatment for, *inter alia*, PTSD. I, therefore, find no basis on which to disturb the ALJ's conclusion that the Houston opinion was supported by substantial evidence, including that received after his review.

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Failure To Assess Any Mental Functional Limitations

As the commissioner observes, *see* Opposition at 1-2 & n.1, the plaintiff's second point of error is intertwined with her first. She argues that the ALJ improperly rejected the Bates opinion and adopted that of Dr. Houston, who gave no consideration to any limitations flowing from ADD

7

or PTSD and did not have the benefit of review of the Bates evidence and opinion. *See* Statement of Errors at 7-14. This point is unavailing for the reasons discussed above.

### C. Handling of Scott and Hayes Opinions

The plaintiff next faults the ALJ for rejecting the opinion of Dr. Scott and ignoring that of Dr. Hayes. *See id.* at 14-17. I find no error.

As the commissioner explains, *see* Opposition at 15-16, the Hayes assessment, dated May 7, 2015, pertains to a prior application for benefits filed by the plaintiff on February 10, 2015, *see* Record at 94, 99-101. The instant applications, filed on March 28, 2016, allege disability beginning on October 12, 2015. *See id.* at 10. The ALJ, hence, did not err in ignoring the Hayes assessment.

As the plaintiff notes, *see* Statement of Errors at 14-15, Dr. Scott assessed several functional limitations under the heading, "Functional Assessment of Ability to Work," Record at 766-67. He stated that, (i) with respect to maximum standing/walking capacity, the "evidence [wa]s supportive of [the plaintiff] being unable to work an 8-hour day, 5 days per week[,]" (ii) with respect to postural activities, "she would not be able to climb, kneel, crouch and crawl in any job capacity[,]" (iii) with respect to manipulative activities, "[f]or reaching this is not possible due to the left shoulder and back and left leg and right foot impairments[,]" and, (iv) with respect to workplace environmental activities, it was "[n]ot possible" for the plaintiff to work at heights or around heavy machinery. *Id.*

The ALJ explained that she gave "no weight to Dr. Scott's opinion that the [plaintiff] cannot sustain full-time work because the evidence provides no support for such an assessment, which appears to be based on the [plaintiff]'s assertions." *Id.* at 16 (citation omitted). The plaintiff acknowledges that, "[i]f the Court agrees with the ALJ that this was a conclusion that [she] is disabled, rather than what it actually appears to be, an opinion regarding the combined results of

his various physical findings, then the ALJ was not required to adopt that conclusion." Statement of Errors at 15. Dr. Scott's opinion that the plaintiff could not work an eight-hour day five days a week was indeed an opinion that she was disabled. *See, e.g., Tammy Lynn W. N. v. Berryhill*, No. 1:18-cv-00113-LEW, 2019 WL 276844, at *3 (D. Me. Jan. 20, 2019) (rec. dec., *aff'd* Feb. 19, 2019) (sole opinion provided by treating nurse practitioner, that claimant was disabled and could not work more than 30 hours per week, was "an opinion on an issue reserved to the commissioner and, thus, entitled to no special significance even if offered by a treating source") (citation and internal quotation marks omitted). Accordingly, the ALJ did not err in rejecting it. *See, e.g., id*. ("[T]he failure of an [ALJ] to adopt a treating medical source's opinion on an issue reserved to the commissioner cannot, standing alone, provide the basis for remand.") (citation and internal quotation marks omitted).

The plaintiff next argues that, regardless, the ALJ was not free to reject Dr. Scott's assessment of functional limitations based on his specific objective findings. *See* Statement of Errors at 15. She points out that the VE present at her hearing testified that there would be no work for an individual restricted to sedentary work who could not reach with her left arm. *See id*. at 16. While the ALJ did not address Dr. Scott's remaining functional limitations, including his finding that the plaintiff could not reach with her left arm, *see* Record at 16, any error is harmless. She accorded "great weight" to the November 7, 2016, RFC assessment of agency nonexamining consultant Marcia Lipski, M.D., *id*., who rejected the Scott opinion, explaining that Dr. Scott "relie[d] heavily on the subjective report of symptoms and limitations provided by the individual," "the totality of the evidence d[id] not support the opinion[,]" and "[t]he opinion contain[ed] inconsistencies, rendering it less persuasive[,]" *id*. at 159-60.

Remand, accordingly, is unwarranted on the basis of this point of error.

9

### D. Challenge to Reliance on Vocational Testimony

The plaintiff next contends that the ALJ erred in relying on the testimony of the VE present at her hearing because the VE (i) did not adequately account for her limited ability to stand/walk and (ii) responded to questions predicated on the ALJ's flawed RFC assessment, which did not account for limitations related to her PTSD and ADD or limitations assessed by Drs. Scott or Hayes. *See* Statement of Errors at 17-23. The second point is derivative of the challenges made above, and fails for that reason.

The first point implicates Social Security Ruling 00-4p ("SSR 00-4p"), which "imposes an *affirmative obligation* on [ALJs] to (i) inquire whether there is any conflict between [VE] testimony and the [*Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) ("DOT")], (ii) elicit a reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified." *Burton v. Astrue*, No. 2:11-cv-174-GZS, 2012 WL 1184425, at *4 (D. Me. Apr. 6, 2012) (rec. dec., *aff'd* Apr. 24, 2012) (emphasis in original).

The plaintiff contends that the ALJ failed to elicit an adequate explanation for the discrepancy between the VE's testimony that a person limited to standing and/or walking for no more than four hours in an eight-hour workday could perform the light jobs of cashier, parking lot, DOT § 211.462-010, ticket seller, DOT § 211.467-030, and toll collector, DOT § 211.462-038, and the definition of those jobs as entailing light work, *see* Statement of Errors at 18-23, which requires "walking or standing to a significant degree[,]" DOT §§ 211.462-010, 211.467-030, 211.462-038.

In response to the ALJ's query whether the VE's testimony was consistent with the DOT, the VE explained that, while the DOT assumes that a light-duty job entails "standing and walking for the full duration of a shift[,] . . . [t]hese jobs I have given to you do not require standing and

walking for more than four hours." Record at 76. The ALJ inquired whether that was "based on [the VE's] professional experience[,]" and the VE responded, "It is." *Id*.

The ALJ explained in her decision, "Although the [VE]'s testimony is inconsistent with the information contained in the [DOT], there is a reasonable explanation for the discrepancy." *Id*. at 17. "While light exertion work usually requires the ability to stand and/or walk for up to six hours in an eight-hour workday, the [VE] testified that her professional knowledge and experience allow her to assert that the above occupations can be performed by someone with the [plaintiff]'s limitations." *Id*.

The plaintiff protests that the VE either "essentially reclassified these light jobs to sedentary to claim that they were consistent with the hypothetical question limiting this person to only standing and/or walking four hours per day, or she was describing an accommodation[,] . . . [n]either [of which] is permitted." Statement of Errors at 19. She contends that the VE's explanation was "too simplistic and too limited to meet the requirements of" SSR 00-4p, a proposition for which she cites caselaw from other jurisdictions. *Id*. at 21-22.

Yet, this court rebuffed an almost identical argument, holding that there is no obvious conflict between a limitation to walking and/or standing only four hours a day and the ability to perform a light job and, in any event, "where, as here, the four-hour limitation was included in the hypothetical question posed to the [VE], the [ALJ] was entitled to rely on her response as including that limitation and as being based on her training, education, and experience." *O'Bannon v. Colvin*, Civil No. 1:13-cv-207-DBH, 2014 WL 1767128, at *8-9 (D. Me. Apr. 29, 2014). In so stating, the court cited, *inter alia*, *Barker v. Astrue*, Civil No. 09-437-P-S, 2010 WL 2680532, at *5 (D. Me. June 29, 2010) (rec. dec., *aff'd* Aug. 4, 2010), in which it held that an ALJ's error in failing to recognize a conflict between a VE's description of the jobs at issue and that provided in the

11

DOT was harmless when "[t]he [VE]'s testimony, which the [ALJ] accepted, that the three jobs about which he testified were primarily visual and that, based on his direct knowledge from 30 years of placement experience, the manipulative demands of the jobs did not exceed those posited in the hypothetical question, sufficed under SSR 00-4p to provide a 'reasonable explanation' for the discrepancy between his description of the jobs and that provided in the DOT." *Barker*, 2010 WL 2680532, at *5.

Remand, accordingly, is unwarranted on the basis of this point of error.

### E. Failure to Acknowledge Post-Hearing Vocational Affidavit

The plaintiff, finally, contends that the ALJ erred in ignoring a post-hearing affidavit of VE David Meuse in contravention of agency regulations, rulings, and guidance and the plaintiff's constitutional due process rights. *See* Statement of Errors at 24-26. She asserts that the error is not harmless because, had the ALJ accepted Mr. Meuse's opinion, she could not have relied upon the jobs of parking lot cashier, ticket seller, and toll collector to deny her claims. *See id*. at 24.

Nonetheless, as the commissioner rejoins, *see* Opposition at 20, the Meuse affidavit trenches on the legal question addressed above. Mr. Meuse concluded that, "[f]rom the information conveyed to me by [the plaintiff]'s counsel, it appears that the [VE] improperly reclassified the exertional level of the light jobs of cashier (parking), ticket seller, and cashier (toll) to sedentary in violation of SSR 00-4p" or, alternatively, "assumed that employers would accommodate the hypothetical person by allowing this person to sit for four hours per shift" in contravention of Social Security Ruling 00-1c, which "does not recognize employer accommodations." Record at 32.

Yet, for the reasons stated above, I have concluded that the ALJ supportably determined that the VE provided an adequate explanation for the discrepancy between her testimony that a person limited to standing and/or walking four hours a day could perform the light jobs at issue

12

and the standing/walking requirements for those jobs set forth in the DOT. The ALJ's error in ignoring the Meuse affidavit, hence, is harmless. *Compare, e.g., Gwendolyn L. v. Berryhill*, No. 1:18-cv-00272-JDL, 2019 WL 2435673, at *4 (D. Me. June 11, 2019) (rec. dec., *aff'd* Sept. 4, 2019) (error in ignoring Meuse affidavit warranted remand when "the Meuse opinion, if accepted, would be outcome-determinative").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of February, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge